**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Hughes Satellite Systems Corporation, *et al.*,[1] | ) | Case No. 26-90739 (ARP) |
| Debtors. | ) | (Jointly Administered) |

# DEBTORS' EMERGENCY MOTION TO STRIKE THE NOTEHOLDER GROUP'S TERMINATION MOTION AND PLAN TERM SHEET

**Emergency relief has been requested, and such relief is respectfully requested not later than September 21, 2026 at 1:00 p.m. (prevailing Central Time).**

**To the extent that you have received notice, if you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 21, 2026 at 1:00 p.m. (prevailing Central Time) in Courtroom 400, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Alfredo R. Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

1 The last four digits of Hughes Satellite Systems Corporation's ("**HSSC**") tax identification number are 7865. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/HughesSatellite. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") move to strike the *Noteholder Group's Emergency Motion to Terminate the Debtors' Exclusive Periods Pursuant to 11 U.S.C. § 1121(d)(1)* [Docket No. 320] (the "**Termination Motion**"),[2] including the chapter 11 plan term sheet [Docket No. 320-2] (the "**Plan Term Sheet**") attached as Exhibit B thereto, and respectfully state as follows.

**PRELIMINARY STATEMENT**

1. Since day one of these chapter 11 cases (these "**Chapter 11 Cases**"), the Noteholder Group has made its view clear. It believes it, and not the Debtors or the independent special committee of HSSC's board of directors, should control these Chapter 11 Cases and it intends to undertake extensive (and counterproductive) litigation to achieve this objective. The Termination Motion is entirely consistent with the Noteholder Group's stated approach to these Chapter 11 Cases. But it is flatly inconsistent with the Bankruptcy Code. As much as the Noteholder Group may believe it should speak for the Debtors' estates, it does not. The Debtors are still well within their exclusivity periods, and the Noteholder Group's filing of the Termination Motion with a description of their proposed plan of reorganization, including the detailed Plan Term Sheet, is a clear violation of the Debtors' exclusivity. While the Noteholder Group admits that it "is currently precluded from proposing a plan of reorganization," that is exactly what it has done. *Id.* ¶ 6. The filing of the Termination Motion and Plan Term Sheet is also an improper solicitation in violation of section 1125 of the Bankruptcy Code.

2. The Noteholder Group's decision to intentionally violate the Bankruptcy Code must have consequences. The Debtors reserve the right to seek all appropriate remedies, which

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Termination Motion.

may include vote designation, equitable subordination, and other sanctions. But, for now, the Court should immediately strike the unlawful Termination Motion and Plan Term Sheet.[3]

## RELIEF REQUESTED

3. The Debtors seek entry of an order in the form attached hereto striking the Termination Motion and the Plan Term Sheet attached as Exhibit B thereto, as well as granting related relief.

## JURISDICTION

4. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The predicates for the relief requested herein are sections 105(a), 1121, and 1125 of the Bankruptcy Code.

## BACKGROUND

6. On August 2, 2026 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases to utilize the breathing spell afforded by chapter 11 to right-size their operations and reorganize their capital structure. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to these Chapter 11 Cases, is set forth in the *Declaration of Robert Del Genio in Support of Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 4].

[3] The Debtors also reserve all rights to respond on the merits to the Termination Motion if the Court does not strike it.

7. Under section 1121(b) of the Bankruptcy Code, the Debtors hold the exclusive right to file a plan of reorganization for the first 120 days following the Petition Date. That period expires on November 30, 2026. The Debtors' exclusive solicitation period under section 1121(c)(3) extends an additional 60 days beyond that, to January 29, 2027. These exclusivity periods reflect Congress's judgment that a debtor is entitled to a meaningful opportunity to negotiate, file, and solicit a chapter 11 plan of reorganization without the interference of competing plans. The Debtors' exclusivity periods remain in full force and effect.

8. On September 10, 2026—less than 40 days after the Petition Date—the Noteholder Group filed the Termination Motion, seeking emergency termination of the Debtors' exclusivity periods. Attached as Exhibit B to the Termination Motion is the detailed Plan Term Sheet that describes the material terms of a chapter 11 plan of reorganization that would be proposed by the Noteholder Group. In addition to the Plan Term Sheet itself, paragraphs 9, 26, 47, and 48 of the Termination Motion describe and incorporate by reference the substance of the Noteholder Group's proposed chapter 11 plan of reorganization, highlighting to every party in interest—including all creditors who are not members of the Noteholder Group—what they would receive if the Noteholder Group's chapter 11 plan of reorganization were to be confirmed. The Noteholder Group made this filing even though it admits—as it must—that it "is currently precluded from proposing a plan of reorganization" during the Debtors' exclusivity periods. Termination Mot. ¶ 6.

## ARGUMENT

### I. The Noteholder Group Violated Section 1121 of the Bankruptcy Code by Filing the Termination Motion and the Plan Term Sheet.

9. Section 1121(b) of the Bankruptcy Code states that "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter." 11 U.S.C. § 1121(b).

10. "Section 1121(b) creates not only a bright line but a 'third rail' [for creditors]: don't file a plan during the exclusivity period." *See In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 126, 132 (Bankr. D. Mass. 2013). Filing a plan of reorganization *or* a pleading that identifies the terms of a competing plan during the debtor's exclusivity period is a violation of section 1121(b). *See, e.g.*, *id.* at 132–33 (finding that the filing of a motion to terminate exclusivity, which included a competing plan as an attachment, violated exclusivity); *In re Clamp-All Corp.*, 233 B.R. 198, 209 (Bankr. D. Mass. 1999) (stating that the filing of an objection to the debtor's disclosure statement, which attached a competing plan and disclosure statement, violated section 1121(b)); *In re PWM Prop. Mgmt., LLC*, No. 21-11445 (MFW) (Bankr. D. Del.) [Docket No. 566] (March 24, 2022, Hr'g Tr. at 26:15–21) (ruling that the filing of a creditor's plan during the debtor's exclusivity period violated sections 1121 and 1125), attached as **Exhibit A**; *In re Circus & Eldorado Joint Venture*, No. 12-51156 (Bankr. D. Nev.) [Docket No. 607] (Sept. 20, 2012, Hr'g Tr. at 5:2–18, 6:18-21; 8:1–7) (finding that a creditor's motion to terminate exclusivity that was "full of essentially plan provisions for another plan" violated the debtor's exclusivity and constituted an improper solicitation under section 1125(b), and imposing sanctions), attached as **Exhibit B**.

11. In *Charles Street*, for example, a creditor filed a motion to terminate exclusivity and attached to that motion a draft chapter 11 plan. 499 B.R. at 128. The creditor served the motion and chapter 11 plan on two other parties, and that plan continued to be available on the court's docket as an attachment to the motion. *Id.* at 128-29. The court held that the creditor had violated the Bankruptcy Code's "bright line" and "third rail" that prohibits a creditor from filing a plan during the debtor's exclusive period. *Id.* at 132. The court also rejected any argument that this was "harmless error." *See id.* The *Charles Street* court reasoned that the "burden cannot fall

on a debtor to prove that ill effects have occurred" because it was the creditor who created the problem with its filing in the first place. *See id.* at 133; *see also Clamp-All Corp.*, 233 B.R. at 206 (creditor violated section 1121(b) by "provid[ing] creditors with a proposed competing plan").

12. The fact that the Noteholder Group labeled their proposal a "Plan Term Sheet" rather than a plan changes nothing. Judge Isgur has found that a party in interest "ma[de] a public solicitation" by filing an alternative restructuring term sheet on the docket and "violate[d] the debtors' exclusive rights" under section 1121. *See In re Arena Energy, LP*, No. 20-34215 (MI) (Bankr. S.D. Tex.) [Docket No. 223] (Sept. 21, 2020, Hr'g Tr. at 11:25–12:5), attached as **Exhibit C**; *see also Arena Energy*, No. 20-34215 (MI) (Bankr. S.D. Tex. Sept. 15, 2020) [Docket No. 172] (order striking alternative restructuring term sheet), attached as **Exhibit D**. Bankruptcy courts have also found exclusivity violations even where no plan or plan term sheet was filed, but where a creditor's motion was "full of essentially plan provisions for another plan"—without attaching any plan document at all. *See In re Circus & Eldorado Joint Venture*, No. 12-51156 (Bankr. D. Nev.) [Docket No. 607] (Sept. 20, 2012, Hr'g Tr. at 8:1–7). The Termination Motion and Plan Term Sheet each detail the terms of a proposed chapter 11 plan of reorganization, all of which would be material to voting creditors, and violate the Debtors' exclusivity under section 1121.

13. Even under the most creditor-friendly reading of section 1121, the Noteholder Group's conduct violates the Debtors' exclusivity. In *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94 (3d Cir. 1988), the Third Circuit held that a creditor did not violate section 1121 when it *privately* shared a draft plan with two other creditors because the creditor never *filed* anything on the docket. *See id.* at 102. That is not what happened here. The Noteholder Group publicly filed the Termination Motion describing the material terms of its proposed plan,

including with a detailed Plan Term Sheet, placing both on the docket for all parties in interest to see and consider.

14. Given that the Termination Motion and Plan Term Sheet are clearly illegal, the Court should strike them from the docket. Courts have inherent power and discretion to strike documents from the record to protect legitimate interests. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."). Section 105 of the Bankruptcy Code codifies this inherent power, providing bankruptcy courts with express authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code," including section 1121 of the Bankruptcy Code. 11 U.S.C. § 105(a); *see also Arena Energy*, No. 20-34215 (MI) (Bankr. S.D. Tex. Sept. 15, 2020) [Docket No. 172], Exhibit D. This should be without prejudice to the right of the Debtors to seek additional sanctions against the Noteholder Group and its members as a result of their unlawful actions.

## II. The Filing of the Termination Motion and Plan Term Sheet Constitute Improper Solicitation in Violation of Section 1125 of the Bankruptcy Code.

15. Section 1125(b) of the Bankruptcy Code bars solicitation of an "acceptance or rejection of a plan . . . after the commencement of the case under [title 11] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

16. Courts have consistently held that a filed document that summarizes the terms of a plan and is served on parties in interest constitutes an improper solicitation under section 1125(b).

*See In re Temple Ret. Cmty. Inc.*, 80 B.R. 367, 369-70 (Bankr. W.D. Tex. 1987) (holding when a party in interest proposes an unapproved draft plan to other creditors, it is in effect "solicit[ing] rejections by dangling an alternative plan before other creditors, suggesting in essence that, if the debtor's plan were scuttled, then a better alternative could then be proposed"); *Duff v. U.S. Trustee (In re Cal. Fidelity, Inc.)*, 198 B.R. 567, 574 (B.A.P. 9th Cir. 1996) (finding that even under the "narrowest definition of 'solicitation,'" a party in interest's letter to other constituencies was an improper solicitation because it described the material terms of competing plans and the strengths and weaknesses of the debtor's plan); *Circus & Eldorado*, No. 12-51156 (Bankr. D. Nev.) [Docket No. 607] (Sept. 20, 2012, Hr'g Tr. at 5:3–18) (finding that a creditor's motion that "described in some detail [the creditor's] opinions of the failings of the Debtor's plan and the advantages of the plan [the creditor] indicated [it was] ready, willing and able to file" was an improper solicitation because "the Court had never been presented with that information so it could approve it as part of a possible disclosure statement"); *Clamp-All Corp.*, 233 B.R. at 207-09 (holding that the presentation of alternatives by third parties during the exclusivity period and prior to the approval and circulation of a court-approved disclosure statement constitutes solicitation and is prohibited *even if* such presentation does not contain a request for a vote on the alternative plan); *In re Aspen Limousine Servs.*, 198 B.R. 341 (D. Colo. 1996) (finding that a non-debtor plan proponent's letter to the debtor's creditors promoting its competing plan constituted improper solicitation).

17. In *Temple Retirement Community*, dissenting bondholders sought to have their indenture trustee inform other bondholders that the dissenters objected to the debtor's plan and believed that an alternative management arrangement "would effect a more advantageous result." 80 B.R. at 368. The dissenting bondholders did not file a competing plan or even attach a draft plan—they merely suggested that a better alternative existed. *Id.* at 369. The court held that this

was an improper solicitation under section 1125(b), reasoning that "[t]he suggestion of a better alternative just around the bend, unfortunately, is not backed up with full disclosure" and that "[t]he bald suggestion of an alternative plan developing in the wings is . . . impermissible." *Id.* at 369–70. The court further explained that "for better or worse, the Bankruptcy Code was designed to give the Debtor a clear advantage early on in the case, unfettered by competing plans" and that "[t]hat policy could be undermined by thinly veiled suggestions of better alternatives, unsupported by full disclosure." *Id.* at 369.

18. Here, the Noteholder Group went far beyond the "thinly veiled suggestions" condemned in *Temple Retirement Community*. The Noteholder Group filed the Termination Motion, including the Plan Term Sheet, on the docket for all parties in interest to see, and represented to the Court that it has "a fully formulated plan ready to file within five business days following an order permitting them to file a plan." Termination Mot. ¶ 13. The Termination Motion further describes the Plan Term Sheet as providing "a joint plan of reorganization for all of the Debtors" that "thoroughly addresses the Debtors' troubled circumstances" and "will likely be accepted by every creditor class." *Id.* ¶¶ 6, 9. If the mere suggestion of a better alternative in the wings was enough to constitute improper solicitation in *Temple Retirement Community*, then the filing of the Termination Motion and Plan Term Sheet specifying plan terms that would be material to any voting creditor is a flagrant violation of section 1125(b). The Court should therefore strike the Termination Motion and Plan Term Sheet as an improper solicitation under section 1125(b).

## EMERGENCY CONSIDERATION

19. The Termination Motion and Plan Term Sheet were filed in violation of sections 1121 and 1125 of the Bankruptcy Code. The Debtors and other parties in interest should

not be forced to litigate this improper motion. The Termination Motion is currently set for hearing on September 28, 2026 at 4:00 p.m. (prevailing Central Time). Emergency consideration of this motion to strike is necessary to avoid the estates bearing the costs of unnecessary litigation.

**RESERVATION OF RIGHTS**

20. The Debtors are evaluating what additional steps, if any, to take in light of what they believe is a significant violation of sections 1121 and 1125 of the Bankruptcy Code by the Noteholder Group. The Debtors will seek such relief by a separate motion at the appropriate time if necessary. Accordingly, this motion is submitted without prejudice to, and with a full express reservation of, the Debtors' rights to take any appropriate action to protect the integrity of the restructuring process.

21. The Debtors further reserve all rights to respond to the Termination Motion on the merits if it is not stricken, and to seek discovery from the Noteholder Group and its members with regard to the Plan Term Sheet, the Termination Motion, and their violations of sections 1121 and 1125 of the Bankruptcy Code.

**CONCLUSION**

22. For the reasons set forth herein, the Debtors respectfully request that the Court strike from the docket the Termination Motion and the Plan Term Sheet.

[*Remainder of Page Intentionally Left Blank*.]

September 14, 2026
Houston, Texas

Respectfully submitted,

*/s/ Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

Roberto J. Kampfner (admitted *pro hac vice*)
555 S. Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Email: rkampfner@whitecase.com

David M. Turetsky (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: david.turetsky@whitecase.com

**WHITE & CASE LLP**
Thomas E Lauria (Texas Bar No. 11998025)
Michael C. Shepherd (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: tlauria@whitecase.com
mshepherd@whitecase.com
mbrown@whitecase.com
fhe@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Adam T. Swingle (admitted *pro hac vice*)
300 North La Salle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Email: jzakia@whitecase.com
mlinder@whitecase.com
adam.swingle@whitecase.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Charles R. Koster*
Charles R. Koster

**Certificate of Service**

I certify that on September 14, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Koster*
Charles R. Koster