**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **Hughes Satellite Systems Corporation, *et al.*,**[1] | § | |
| | § | **Case No. 26-90739 (ARP)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

**ORDER DEFINING SCOPE OF EXAMINER'S EXAMINATION**

On August 8, 2026, the Court entered the *Order Directing Appointment of Examiner* [ECF No. 259] but postponed consideration of the scope of the examination. Based on the record before me, it is hereby **ORDERED** as follows:

1. **Scope of Examination.** Subject to further Court order, the scope (the "**Scope**") of the Examiner's examination (the "**Examination**") shall be to investigate the following transactions (the "**Transactions**"):

a. The lease by Hughes of the Jupiter 3 satellite from EchoStar XXIV, LLC, effective in December 2023, including, without limitation, all payments, prepayments, financings or loans, and transactions in connection with the Satellite Lease;

b. Hughes's declaration and payment of $529 million in cash dividends to EchoStar on February 15, 2024, and $500 million in cash dividends to EchoStar on March 12, 2024;

c. Hughes's payment to EchoStar of approximately $196 million in 2024 allegedly related to income taxes;

d. The September 2025 transaction between EchoStar and Space Exploration Technologies Corp. ("**SpaceX**"), including the referral of Hughes's HughesNet subscribers to SpaceX and any agreement to transfer or transfer of any satellite

[1] The last four digits of Hughes Satellite Systems Corporation's tax identification number are 7865. A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/HughesSatellite. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

assets or regulatory authorizations by the Debtors in connection with EchoStar's transaction with SpaceX;

e. EchoStar's 2025 purchase of $123 million in Secured Notes, the first quarter 2026 $50 million secured financing from EchoStar XXIV added as an additional secured obligation under the security agreement for the Secured Notes, and the $1 million unsecured financing from EchoStar XXIV;

f. Any other transfers, transactions, or dealings between the Debtors, on the one hand, and EchoStar, EchoStar XXIV, or any other insider or affiliate, on the other hand; and

g. The involvement of any professionals who may have assisted with these transactions.

The Examiner is further directed to report on the Transactions and the merits of any causes of action that may exist as a result of those Transactions, including without limitation:

a. actual and constructive fraudulent transfer claims under 11 U.S.C. §§ 544 and 548 and applicable state law;

b. preference claims against insiders or their agents under 11 U.S.C. § 547;

c. claims under the Colorado Uniform Voidable Transactions Act, Colo. Rev. Stat. §§ 38-8-101 et seq., including § 38-8-106(2);

d. claims for unlawful dividends;

e. claims for breach of fiduciary duty against EchoStar Corporation as controlling shareholder and against Hughes's current and former directors and officers; and

f. claims for equitable subordination.

2. **Reports.** The Examiner must file with the Court interim reports on the Examination every forty-five (45) days from the date the Examiner's appointment is approved. The Examiner must file with the Court a final report no later than thirty (30) days after the conclusion of the Examiner's Examination.

3. **Retention of Professionals.** All professionals engaged by the Examiner must be retained by the Examiner and subject to Court approval under standards equivalent to those set forth in 11 U.S.C. § 327. The Examiner and all professionals retained by the Examiner pursuant

to an order of this Court shall be compensated and reimbursed for their expenses pursuant to any procedures that may authorize interim compensation and reimbursement of expenses of professionals. Compensation and reimbursement of the Examiner shall be determined pursuant to 11 U.S.C. § 330, and compensation and reimbursement of the Examiner's retained professionals shall be determined pursuant to standards equivalent to those in 11 U.S.C. § 330.

4. **Modifications to Scope.** At any time before the issuance of the final report, the Scope of the Examination may be clarified, modified, expanded, or abridged by the Court including upon motion by the Examiner, the Debtors, the Noteholder Group, the Committee, or the U.S. Trustee.

5. **Work Plan.** Within seven business days of entry of the Order approving the Examiner's appointment pursuant to Fed. R. Bankr. P. 2007.1(c), or such other time as requested by the Examiner, the Examiner shall confer with the Debtors, the U.S. Trustee, the Noteholder Group, and the Committee and file a work plan (the "**Work Plan**") consistent with this Order, which shall be subject to the Court's approval after a hearing on seven days' notice. The Examiner or any party in interest may move to amend the Work Plan before the issuance of the final report. The Work Plan shall address, at a minimum, (1) the degree of cooperation needed from the parties to complete such reports, (2) procedures to obtain access to documents or information the Debtors or any other party asserts a claim of privilege, or otherwise objects to disclosing, (3) a discovery process that may be needed to complete the final report, and (4) an estimated budget needed to complete a final report. From time to time during the course of the Examination, the Examiner may consult with parties in interest concerning information and documents they believe the Examiner should seek to obtain.

6. **Objections to Work Plan.** Objections to the Work Plan shall be filed no later than two business days before any hearing on the matter.

7. **Standing.** The Examiner will have standing as a "party-in-interest" with respect to the matters that are within the scope of the Examination and will be entitled to appear and be heard at any and all hearings in these cases.

8. **Limits on Examiner.** The Examiner shall not serve any other role in the case other than as Examiner and, for the avoidance of doubt, shall have no role in the prosecution of any claims or causes of action.

9. **Confidentiality.** Until the Examiner has filed the report (whether interim or final), neither the Examiner nor the Examiner's professionals, representatives, or agents will publicly disclose information concerning the performance of the Examination or the Examiner's duties.

10. **Discovery**. The Examiner will have access to all non-privileged documents and information, including materials that may be confidential, held by any of the Debtors or any of their officers, directors, affiliates, and subsidiaries, including materials provided to the special committee of the Debtors' board of directors and its counsel.

11. **Other Relief.** Nothing in this Order will impede the right of the U.S. Trustee, the Committee, the Noteholder Group, the Debtors, or any other party in interest to request any other relief during the pendency, or after the conclusion, of the Examination, including seeking discovery from another party or requesting the appointment of a trustee.

12. **Cooperation**. The Debtors and their direct and indirect officers, directors, affiliates, and subsidiaries (and their respective professionals), including the special committee of the Debtors' board of directors and its professionals, are directed to cooperate fully with the Examiner in conjunction with the performance of any of the Examiner's duties and the

Examination, including producing to the Examiner, as promptly as practicable, all documents, information, and individuals relevant to the Examination that the Examiner requests.

13. **Coordination**. The Examiner, the Debtors, the Committee, and the Noteholder Group shall use their best efforts to coordinate and minimize duplication.