**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| HUGHES SATELLITE SYSTEMS CORPORATION, *et al.*,[1] | ) | Case No. 26-90739 (ARP) (Jointly Administered) |
| Debtors. | ) | |

**THE NOTEHOLDER GROUP'S OPPOSITION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PROFESSIONALS**
(Related to Docket No. 295)

The Noteholder Group,[2] comprised of holders of claims that dwarf all others in these chapter 11 cases, submits this opposition (the "Opposition") to the *Debtors' Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Dkt. 295] (the "Motion"). In support of this Opposition, the Noteholder Group respectfully states as follows:

## PRELIMINARY STATEMENT

1. Through the Motion, the above captioned debtors and debtors in possession (the "Debtors") ask the Court to establish interim compensation procedures (the "Procedures") that would enable the Debtors to pay professional advisors on an accelerated basis, presumably using cash collateral (as there is no unencumbered cash in the estates) and ahead of other creditors

[1] The last four digits of Hughes Satellite Systems Corporation's tax identification number are 7865. A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/HughesSatellite. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

[2] The Noteholder Group consists of the entities listed on Exhibit A of the *Verified Statement of Noteholders Pursuant to Bankruptcy Rule 2019* [Dkt. 154].

holding priority and super-priority claims. The Motion must be denied for several reasons. First, the Debtors do not have the unencumbered cash, on either a current basis or a forecasted basis, to pay any of their administrative claims and superpriority claims. The Debtors' have been manufacturing a cash neutral forecast by deferring administrative expenses since the beginning of the case giving the illusion that cash is accumulated. They have now deferred nearly $48 million in payments for the use of the J3 satellite. They have deferred an estimated $43 million in estate professional fees and potentially other kinds of claims that have not been identified yet.

2. At the same time, there are or will be claims entitled to priority under section 507(b) of title 11 of the United States Code (the "Bankruptcy Code") as a result of the admitted continued erosion of the Debtors customer base. The most recent forecast confirms that the collateral for the Secured Notes is diminishing while the secured creditors are prevented from enforcing their rights by reason, among others, of the automatic stay resulting in a superpriority administrative expense in favor of the Secured Notes, which has priority over all other administrative expenses, including professional fee claims.

3. The cases are clear that where the debtor does not have the ability to pay all administrative claims and superpriority claims, interim compensation procedures that would practically elevate administrative claims to a priority ahead of the superpriority claims should be denied. *In re Chips 'N Twigs, Inc.*, 58 B.R. 109, 110-11 (Bankr. E.D. Pa. 1986) ("interim fees can be paid only when it is reasonably clear that the assets of the estate will be sufficient to pay all administrative expenses" and "interim fees under § 331 cannot be paid from assets that would otherwise be payable to a creditor holding a superpriority"). That is precisely the case here. Accordingly, the Court should not approve interim compensation procedures for professionals that

would prioritize the payment of those claims over existing other priority and superpriority claims when the Debtors have insufficient assets to pay all of them.

4. Second, the law is clear: a debtor cannot pay its advisors with a secured creditor's cash collateral absent the creditor's consent. The Noteholder Group has continually objected to the use of its cash collateral for the payment of professional fees, and it reiterates that objection here. The Motion skirts this issue entirely. The Debtors have not provided any rationale for why the Court should ignore settled law and allow them to pay their advisors pursuant to the Procedures. In the absence of any cash that can be used for the payment of professional fees, there is no basis for accelerating the consideration and payment of professional fees. Indeed, there is no basis for any interim compensation in these cases.

5. Third, the Procedures seek to exclude the Noteholder Group from the group of parties that receive notice of, and an opportunity to object to, the fees sought by the Debtors' professionals. To deprive the Noteholder Group—whose cash collateral would be funding any professional fee payment in these Chapter 11 Cases—of an opportunity to be heard regarding the propriety and reasonableness of any requested professional fees is entirely improper. To the extent the Court approved any interim compensation procedures, and it should not, those procedures should include the Noteholder Group as a notice party.

6. In summary, the Motion fails to establish a basis to depart from the compensation procedures established by the Bankruptcy Code. Accordingly, the Motion should be denied.

## BACKGROUND

### A. The Debtors and These Chapter 11 Cases

7. Hughes Satellite Systems Corporation ("Hughes") is a wholly-owned subsidiary of EchoStar, a publicly traded company controlled by Charles Ergen, who exercises approximately 90.4% of EchoStar's voting power. The other eleven Debtors in these Chapter 11 Cases are wholly-owned subsidiaries of Hughes. Dkt. 4 at ¶ 27. EchoStar and Ergen controls Hughes and all of its subsidiaries.

8. On August 2, 2026 (the "Petition Date"), the Debtors filed for chapter 11 protection after failing to repay the outstanding principal and interest of the Debtors' $750 million 5.25% Senior Secured Notes (the "Secured Notes"). The holders of the Secured Notes hold valid, perfected, and enforceable first-priority liens on substantially all of the assets of the Debtors. Thus far, no party has disputed the granting or continuing validity and perfection of these security interests, and the Court found that the Secured Noteholders' liens were valid, perfected, and enforceable in the currently operable cash collateral order.[3] Dkt. 370 (the "Third Interim Cash Collateral Order") at ¶ 6(i). Pursuant to the Third Interim Cash Collateral Order, the Debtors acknowledged and the Court so ordered that the Noteholder Group is entitled to superpriority administrative expense claims under sections 503(b), 507(a), and 507(b) of the Bankruptcy Code to the extent the Noteholder Group's collateral is diminished during these Chapter 11 Cases.

### B. The Debtors' Dire Financial Condition

9. The Debtors' financial condition, which was perilous on the Petition Date, is rapidly declining. The Debtors show themselves as cash flow positive since the Petition Date only because they elected to defer two $15.9 million payments due under the J3 Satellite Lease (another

---

[3] The Challenge Period for the Creditors' Committee to challenge the liens and claims of the Secured Notes is scheduled to expire on November 16, 2026.

J3 Satellite Lease payment will have been deferred before this motion is heard) and have not yet made any payments to professionals. Even if additional J3 Satellite Lease payments are deferred, the amount of unpaid administrative expenses will increase, thus increasing the amount of administrative expense claims that will compete with the equal priority claims of professionals and higher ranking superpriority claims for the Debtors' limited resources. Since the only cash the estates have is cash collateral, the estates are collectively administratively insolvent.

**C. The Debtors File the Motion**

10. The Motion seeks an order from the Court establishing the Procedures, by which professionals can receive interim compensation and reimbursement of expenses. The Procedures provide for the monthly payment of a portion of the professionals' fees and payment of the remaining portion every three months. Pursuant to the Procedures, the "Professionals"—a term that is defined to include professionals retained by the Debtors and the Creditors' Committee—will file monthly fee statements and serve them on the Debtors, Debtors' counsel, counsel for the Creditors' Committee, and the U.S. Trustee (collectively, the "Notice Parties"). Procedures at ¶ 1.a. The Notice Parties then have fourteen days to object to the monthly fee statement, and, if no Notice Party objects before the deadline, the Debtors are authorized to pay such Professional 80% of the fees and 100% of the expenses applicable to the monthly fee statement. *Id.* at ¶ 1.c. Then, every three months, beginning with the three-month period ending on October 31, 2026, the Procedures contemplate the Professionals filing interim fee applications that, upon approval by the Court after a twenty-one day objection period, will authorize the Debtors to pay the remaining 20% of the fees held back from the Professionals' monthly fee statements. *Id.* at ¶ 1.e.

## ARGUMENT

### A. The Debtors' Financial Condition Precludes Varying The Compensation Procedures In The Bankruptcy Code.

11. Section 331 of the Bankruptcy Code governs the provision of interim compensation to the Debtors' professionals. 11 U.S.C. § 331. Section 331 "allows the Court some flexibility" in determining the contours of procedures that permit interim compensation. *In re Affinity Health Care Mgmt., Inc.*, 2009 WL 596825, at *2 (Bankr. D. Conn. Jan. 28, 2009); *see also In re Chips 'N Twigs, Inc.*, 58 B.R. 109, 110-11 (Bankr. E.D. Pa. 1986) ("[T]he authority for the actual ***payment*** of administrative expenses—as opposed to their mere ***allowance***—is within the sound discretion of the court . . . .") (emphases in original). Section 331 contemplates application for professional compensation "not more than once every 120 days after an order for relief in a case under this title . . . ." 11 U.S.C. § 331.

12. The Debtors dwindling cash position highlights why the Motion cannot be approved. All interim compensation procedures should be denied where the estate cannot establish that the debtor has sufficient funds to cover all superpriority claims and administrative costs. The *Chips 'N Twigs* court provided a straightforward recitation of the rule: "interim fees can be paid only when it is reasonably clear that the assets of the estate will be sufficient to pay all administrative expenses" and "interim fees under § 331 cannot be paid from assets that would otherwise be payable to a creditor holding a superpriority." *See Chips 'N Twigs*, 58 B.R. at 111 (collecting cases). To permit interim compensation payments where "there may not be sufficient funds in the estate to pay all administrative expenses" would contradict the Bankruptcy Code's strict priority requirements. *In re Robin Indus., Inc.*, 16 B.R. 695, 697 (Bankr. N.D. Ga. 1982). "The lack of sufficient unencumbered assets" to pay professional fees "is not an adequate basis" to ignore a secured creditor's superpriority status. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73,

77 (2d Cir. 1984); *see also In re Fry Road Assocs., Ltd.*, 64 B.R. 808, 809 (Bankr. W.D. Tex. 1986) ("[A]ny cash collateral order allowing use of assets to pay ordinary administrative expenses under § 503(b)(1) would be improper were a claim with a higher priority was outstanding, unless payment of the superior claim was ***absolutely assured***.") (emphasis added).

13. To approve the Motion and permit the Debtors to pay their advisors would do violence to the Bankruptcy Code's priority scheme. Given that the Debtors are already administratively insolvent, continue to accrue administrative expenses, the Debtors cannot show that they are clearly likely to be able to pay all administrative expenses upon confirmation of a plan of reorganization. Moreover, the Debtors' professionals should not receive payment when it is clear that unpaid superpriority claims exist. Because "interim fees can be paid only when it is reasonably clear that the assets of the estate will be sufficient to pay all administrative expenses," the Debtors' professionals are not entitled to interim compensation. *Chips 'N Twigs, Inc.*, 58 B.R. at 111. Further, the Noteholder Group has a superpriority claim that is senior to the administrative claims held by the Debtors' professionals. Payment of the Noteholder Group's superpriority claims is not "absolutely assured," and thus, elevating professional fee claims ahead of the Noteholder Group's superpriority claims would be improper. *Flagstaff Foodservice Corp.*, 739 F.2d at 77; *Fry Road Assocs., Ltd.*, 64 B.R. at 809.

**B. The Debtors Cannot Use the Secured Noteholders' Cash Collateral**

14. Cash collateral is uniquely protected by the Bankruptcy Code due to its "status as the highest and best form of collateral." *In re S. Side House, LLC*, 474 B.R. 391, (Bankr. E.D.N.Y. 2012); *see also In re Carey*, 202 B.R. 796, 798 (Bankr. M.D. Ga. 1996) ("Because of the unique nature of cash collateral, however, special protections apply to prevent its dissipation."). Section 363(e) of the Bankruptcy Code mandates that the Court "shall prohibit or condition" use of cash collateral "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e);

*see also In re First Brands Grp., LLC*, 2026 WL 253634, at *2 (S.D. Tex. Jan. 31, 2026) ("The protection afforded a creditor whose cash collateral is permitted by the court to be used by a debtor in possession is whatever condition is deemed necessary to provide adequate protection of the creditor's interest.") (citation and internal quotations omitted).

15. A debtor cannot pay administrative claims, including professional fees, out of a secured creditor's cash collateral without the consent of the secured creditor or an order of the court finding that the secured creditor is adequately protected. *See In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 682 (Bankr. D. Colo. 1992) (denying debtor's compensation procedure motion because secured creditor objected and finding cash collateral can only be used "to preserve and maintain the collateral"). Courts are clear that "interim compensation cannot be paid from property of the estate to the extent that that property is encumbered by a creditor's security interest." *See Chips 'N Twigs*, 58 B.R. at 111 (collecting cases). Accordingly, courts deny interim fee motions where the interim compensation would be paid out of a secured creditor's cash collateral without consent. Indeed, "where there are insufficient unencumbered assets with which to pay administrative expenses, professionals employed by the debtor or by creditors' committees may not ordinarily look to secured creditors' collateral for payment." *In re Molycorp, Inc.*, 562 B.R. 67, 76 (Bankr. D. Del. 2017).

16. The Debtors have not identified any unencumbered assets from which to pay professional fees, thus, all of the Debtors' cash is cash collateral. Courts routinely deny the payment of professional fees in similar circumstances. In *Jefferson Business Center*, the court denied the debtor's motion for monthly payment of fees because the secured creditor did not consent to the use of its cash collateral, which meant the debtor was not permitted to use the cash collateral "to pay attorneys' fees or any purpose other than to preserve and maintain the collateral."

*Jefferson Bus. Ctr. Assocs.*, 135 B.R. at 682. Likewise, the Second Circuit in *Flagstaff* reversed the lower court's award of interim compensation, concluding that the secured creditor's "security interest has priority over . . . claims for professional services." *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 75 (2d Cir. 1984); *see also Chips 'N Twigs, Inc.*, 58 B.R. at 111 ("[I]nterim compensation cannot be paid from property of the estate to the extent that that property is encumbered by a creditor's security interest.").

**C. The Noteholder Group Should Be a Notice Party.**

17. As stated above, the Noteholder Group is the most significant creditor constituency in these Chapter 11 Cases. Every member of the Noteholder Group holds Secured Notes. The value of the collateral securing the Secured Notes is likely less than the total amount of Secured Notes . Furthermore, to the extent that any professional fees are paid prior to confirmation of a plan of reorganization, such fees will be paid out of cash collateral. Despite all of these uncontroversial facts, the Procedures do not provide notice to the Noteholder Group and it is not given the opportunity to object to the contemplated monthly fee payments. The Noteholder Group should be a Notice Party in any order entered by the Court establishing interim compensation procedures.

**CONCLUSION**

For the foregoing reasons, the Noteholder Group respectfully requests that the Court deny the Motion in its entirety.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 14, 2026
Houston, Texas

Respectfully submitted,

*/s/ Oliver S. Zeltner*
Oliver S. Zeltner (TX Bar No. 24104000)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: ozeltner@jonesday.com

-and-

Bruce Bennett (CA Bar No. 105430)
(admitted *pro hac vice*)
Joshua M. Mester (CA Bar No. 194783)
(admitted *pro hac vice*)
Veronica Dragalin (CA Bar No. 281370)
(admitted *pro hac vice*)
Benjamin C. Sandberg (S.D. Tex. Fed. No. 3864653)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: bbennett@jonesday.com
jmester@jonesday.com
vdragalin@jonesday.com
bsandberg@jonesday.com

*Attorneys for The Noteholder Group*

**Certificate of Service**

I certify that on October 14, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Oliver S. Zeltner*
Oliver S. Zeltner