United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 16, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Hughes Satellite Systems Corporation, *et al.*,[1] | ) | Case No. 26-90739 (ARP) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 15, 41, 78, 265, 274** |

**AMENDED THIRD INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF THE DEBTORS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**" or "**Cases**"), for entry of an interim order pursuant to sections 105, 361, 362, 363, 503, 506, and 507 of Bankruptcy Code, and in accordance with Rules 2002, 4001, 6003, 6004, and 9014 of the Bankruptcy Rules, rules 4001-1, 4002-1, and 9013-1 of the Local Bankruptcy Rules, and the Complex Case Procedures, (i) authorizing the continued use of cash collateral, (ii) granting adequate protection, (iii) modifying the automatic stay, (iv) scheduling a final hearing and (v) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and entry of this order (this "**Amended Third Interim Order**") being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this

[1] The last four digits of Hughes Satellite Systems Corporation's tax identification number are 7865. A complete list of each of the Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/HughesSatellite. The location of the Debtors' corporate headquarters and the Debtors' service address is 9601 S. Meridian Blvd., Englewood, Colorado 80112.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the First Interim Order, or the Second Interim Order, as applicable.

District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that due, sufficient, and proper notice of the Motion was provided under the circumstances and in accordance with the Bankruptcy Rules and the Bankruptcy Local Rules, and it appearing that no other or further notice need be provided; and upon consideration of the Motion and the First Day Declaration; and an interim hearing with respect to the Motion having been held on August 3, 2026 and August 4, 2026 (the "**Interim Hearing**"), and the Court having entered that certain *Interim Order (I) Authorizing Use of the Debtors' Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 78] (the "**First Interim Order**"); and a second interim hearing with respect to the Motion having been held on August 26, 2026 (the "**Second Interim Hearing**"), and the Court having entered that certain *Second Interim Order (I) Authorizing Continued Use of the Debtors' Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 274] (the "**Second Interim Order**"); and notice of the relief sought in this Amended Third Interim Order having been given by the Debtors as set forth in the Motion, the First Interim Order, and the Second Interim Order, and no further hearing being necessary for entry of this Amended Third Interim Order; the Ad Hoc Group having filed the *Noteholders' Objection To Debtors' Cash Collateral Motion And Request For Adequate Protection* [Docket No. 41], and all other objections to the Motion, if any, having been withdrawn, resolved, or overruled; and the relief requested in the Motion being in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

a. The final hearing (the "**Final Hearing**") on the Motion shall be held on October 20, 2026 at 11:00 a.m., prevailing Central Time. Any objections or responses to entry of an order (the "**Final Order**") on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on October 12, 2026. In the event no objections to entry of the final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

b. The Debtors are authorized, but not directed, to use "cash collateral" as that term is defined in section 363 of the Bankruptcy Code, which shall include, but not be limited to, all prepetition or postpetition cash or cash equivalents of any kind held by the Debtors, whether in reserved accounts, blocked accounts, or otherwise, in which the Prepetition Secured Parties (as defined herein) may hold or may assert a security interest by virtue of the Security Agreement (as defined herein), the indenture governing the Senior Secured Notes (as defined herein), and/or the Intercompany Financing Agreement (as defined herein), as applicable (the "**Cash Collateral**"), for the purposes of funding general operating and working capital expenses and for other lawful corporate purposes of the Debtors in accordance with the Budget (as defined herein) and subject to and on the terms set forth in this Amended Third Interim Order through and including October 23, 2026, to the extent as set forth in the budget attached hereto as **Exhibit 1** and as further updated in accordance with the terms of this Amended Third Interim Order.

c. The Debtors are authorized to provide the adequate protection set forth herein to the Prepetition Secured Parties for their interests in the Prepetition Collateral (as defined herein), including Cash Collateral.

d. The automatic stay imposed by section 362 of the Bankruptcy Code is modified or vacated to the extent necessary to implement and effectuate the terms and provisions of this Amended Third Interim Order, waiving any applicable stay (including Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Amended Third Interim Order, and providing for the immediate effectiveness of this Amended Third Interim Order.

The Court having considered the relief requested in the Motion, the First Day Declaration, the evidence submitted and arguments presented at the Interim Hearing and Second Interim Hearing, and having entered the First Interim Order and the Second Interim Order; and notice of the relief sought in this Amended Third Interim Order having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and all applicable Local Rules and Complex Case Procedures, and no further hearing being required; and it appearing to the Court that granting the interim relief requested in the Motion as modified by this Amended Third Interim Order is necessary to avoid

immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, creditors, and equity holders, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' assets; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

**A. The Petition Date.**

1. On August 2, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under Chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered.

**B. Debtors in Possession.**

2. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**C. Committee Formation.**

3. On August 18, 2026, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**D. Standstill Period.**

4. On September 18, 2026, the Debtors, the special committee of the Board of Directors of Hughes Satellite Systems Corporation (the "**Special Committee**") the Committee, and the Ad Hoc Group stipulated and agreed to stay certain litigation matters from the date of entry of the stipulation through and including October 2, 2026, or as extended by the agreement of the Debtors, the Special Committee, the Committee, and the Ad Hoc Group (the "**Standstill Period**").

**E. Jurisdiction and Venue**.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**F. Preliminary Findings Regarding the Prepetition Secured Obligations**.

6. Based on the Motion, the First Day Declaration, and the evidence submitted at the Interim Hearing, and without prejudice to the rights of the Debtors or any other party in interest to challenge any of the following (collectively, paragraphs (i) through (v) hereof shall be referred to herein as the "**Preliminary Findings**"), the Court makes the following preliminary findings on an interim basis, subject to the entry of the Final Order and the Reservation of Rights below:

(i) **Senior Secured Notes**. Prior to the Petition Date, Hughes Satellite Systems Corporation ("**HSSC**") issued 5.250% Senior Secured Notes due August 1, 2026 in an aggregate principal amount of approximately $750 million (the "**Senior Secured Notes**" and the noteholders thereof, the "**Secured Noteholders**"),[4] issued pursuant to that certain indenture dated July 27,

[4] The holders of a majority in aggregate principal amount of the Senior Secured Notes outstanding at such time, together with EchoStar XXIV (as defined herein), are the "**Required Prepetition Secured Parties**"; *provided* that, for the avoidance of doubt, EchoStar XXIV's inclusion as a Required Prepetition Secured Party (a) does not entitle EchoStar XXIV to any vote or consent right in determining whether the holders of a majority in aggregate principal amount of the Senior Secured Notes have taken or authorized any action, delivered any notice, or granted any waiver under this Amended Third Interim Order, each of which shall be determined solely by reference to the holders of a majority in aggregate principal amount of the Senior Secured Notes outstanding at such time, and (b) shall not permit EchoStar XXIV, acting alone, to block, veto, or withhold any action, notice, waiver, or consent that the Required Prepetition Secured Parties are authorized or required to give hereunder.

2016, as supplemented (the "**Indenture**"), by and among HSSC, the Guarantors,[5] Wilmington Savings Fund Society, FSB ("**WSFS**"), as successor indenture trustee (in such capacity, the "**Prepetition Trustee**"), and successor collateral agent (in such capacity, the "**Collateral Agent**")[6]. The Senior Secured Notes are secured by valid and perfected first-priority liens on substantially all of the assets of HSSC and the Guarantors, and guaranteed on a joint and several basis by each of the Guarantors, in each case, as set forth in the Prepetition Secured Financing Documents.

(ii) **Secured Intercompany Financing Agreement**. Prior to the Petition Date, HSSC entered into that certain Financing Agreement, dated as of February 13, 2026 (the "**Intercompany Financing Agreement**"), by and among HSSC, the Guarantors, and EchoStar XXIV L.L.C. ("**EchoStar XXIV**" and, together with the Secured Noteholders, the Prepetition Trustee, and the Collateral Agent, the "**Prepetition Secured Parties**"), pursuant to which EchoStar XXIV extended financing to HSSC in an aggregate principal amount of $50 million (the "**Intercompany Secured Obligations**"), bearing interest at the rate of 13.75% per annum, and maturing on August 1, 2026. The Intercompany Secured Obligations are purportedly designated as "Additional Secured Obligations" under the Security Agreement, and EchoStar XXIV joined as an "Additional Secured Party" under the Security Agreement pursuant to that certain Additional Secured Party Joinder, dated as of February 13, 2026 (the "**Secured Party Joinder**"), among EchoStar XXIV, HSSC, and the Collateral Agent. The Intercompany Secured Obligations are purportedly guaranteed on a joint and several basis by each of the Guarantors and are purportedly secured by the Prepetition Liens on the Prepetition Collateral.

(iii) **Prepetition Collateral**. The Senior Secured Notes and the Intercompany Secured Obligations are secured by valid and perfected liens (the "**Prepetition Liens**") on the Collateral pursuant to and as defined in that certain Security Agreement, dated as of June 8, 2011 (as amended and supplemented from time to time, the "**Security Agreement**") and related collateral agreements described in the Security Agreement and executed in connection therewith, which constitutes substantially all of the assets of HSSC and the Guarantors (collectively, the "**Prepetition Collateral**") and are guaranteed on a joint and several basis by each of the Guarantors. The

---

The Ad Hoc Group reserves all rights regarding the interpretation of the Required Prepetition Secured Parties.

[5] The following entities are Debtors in these Chapter 11 Cases, are direct and indirect wholly-owned subsidiaries of HSSC, and are guarantors of HSSC's outstanding funded debt: Hughes Network Systems, LLC; HNS License Sub, LLC; EchoStar Orbital L.L.C.; EchoStar Satellite Services L.L.C.; HNS Real Estate, LLC; Hughes Network Systems International Service Company; HNS Americas, L.L.C.; HNS Americas II, L.L.C.; HNS-India VSAT, Inc.; Hughes Communications, Inc.; EchoStar Government Services L.L.C. (collectively with HSSC, the "**Guarantors**").

[6] U.S. Bank Trust Company, National Association previously served as indenture trustee and collateral agent with respect to the senior secured notes and was succeeded in those roles by WSFS on July 31, 2026.

Prepetition Collateral includes, among other things, substantially all of the Debtors' real and personal property, accounts receivable, subscriber receivables, equipment, inventory, intellectual property, orbital slot licenses and regulatory authorizations, investment property, deposit accounts, and the proceeds thereof, but excludes any Excluded Property (as defined in the Security Agreement). Cash generated from the Debtors' operations constitutes Cash Collateral in which the Prepetition Secured Parties hold a valid and perfected security interest by virtue of the Security Agreement, the Indenture, and/or the Intercompany Financing Agreement, as applicable.

(iv) **<u>Prepetition Secured Obligations</u>**. As of the Petition Date, the Debtors were indebted under the Senior Secured Notes in an aggregate principal amount of approximately $750 million, plus accrued and unpaid interest, fees, expenses, and all other amounts payable under or in connection with the Senior Secured Notes, the Indenture, and the Security Agreement. The Debtors were also purportedly indebted under the Intercompany Financing Agreement in an aggregate principal amount of approximately $50 million, plus accrued and unpaid interest, fees, expenses, and all other amounts payable under or in connection with the Intercompany Financing Agreement (such obligations under the Senior Secured Notes, the Indenture, the Intercompany Financing Agreement, and the Security Agreement, collectively, the "**Prepetition Secured Obligations**"). The Debtors and all parties in interest reserve all rights, claims, defenses, counterclaims, and offsets with respect to the Prepetition Secured Obligations.

(v) **<u>Prepetition Secured Financing Documents</u>**. The Indenture, the Intercompany Financing Agreement, the Security Agreement, and all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, as amended, restated, supplemented, or otherwise modified prior to the Petition Date, including any guarantee agreements, pledge agreements, collateral documents, control agreements, security documents, UCC financing statements, and fee letters (collectively, the "**Prepetition Secured Financing Documents**"), are valid agreements among the parties thereto. The Debtors and parties in interest reserve the right to challenge the validity and perfection of the Prepetition Secured Financing Documents in accordance with paragraph 27 of this Amended Third Interim Order and the procedures and deadlines set forth therein.

**G. Findings Regarding the Use of Cash Collateral.**

7. *Good Cause*. Good and sufficient cause has been shown for the entry of this Amended Third Interim Order and for authorization of the Debtors to continue to use Cash Collateral as set forth herein.

8. *Need for Continued Use of Cash Collateral.* The Debtors seek authority on an interim basis to continue to use Cash Collateral on the terms described herein through and including October 23, 2026, in order to, among other things: (a) permit the orderly continuation of the operation of their businesses; (b) pay the costs, fees, and expenses of administration of the Cases and claims in the amounts approved by this Court in the "first" and "second" day orders (the "**First Day Motion Payments**"); and (c) for general corporate and working capital purposes, in each case, subject to the terms and conditions set forth herein (including the Budget (subject to Permitted Variances (as defined herein)). The Debtors' continued access to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to prevent irreparable harm, to finance their operations, to preserve and maintain the going concern values of the Debtors, and to maximize the return for all stakeholders. The terms of this Amended Third Interim Order are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtors, their estates, their creditors and other parties in interest will be seriously and irreparably harmed.

9. *Use of Cash Collateral.* All Cash Collateral and all proceeds of the Prepetition Collateral may be used by the Debtors (a) to pay the costs of administration of the Cases and claims or amounts approved by this Court in the "first" and "second" day orders, and (b) for general corporate and working capital purposes, in each case subject to the terms and conditions of this Amended Third Interim Order, including the Budget (subject to Permitted Variances).

10. *Adequate Protection.* The Prepetition Secured Parties are entitled to adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code against any diminution

in value of such interests from and after the Petition Date resulting from, among other things, (a) the use, sale, or lease by the Debtors of such Prepetition Collateral; (b) the amount of Cash Collateral used by each of the Debtors; (c) the imposition of the automatic stay; and (d) any other act or omission which causes postpetition diminution in the Prepetition Secured Parties' value of their interests in the Prepetition Collateral, as calculated on an aggregate basis (collectively, and to the fullest extent permitted under the Bankruptcy Code, "**Diminution in Value**").[7] The adequate protection provided herein and other benefits and privileges contained herein are necessary to protect the Prepetition Secured Parties from any Diminution in Value of their interests in the Prepetition Collateral. Nothing in this Amended Third Interim Order shall constitute a finding or ruling that EchoStar XXIV holds valid, perfected, and enforceable liens on or security interests in any Prepetition Collateral (including Cash Collateral), and the Debtors and all parties in interest, including the Secured Noteholders and the Committee, expressly reserve all rights in respect of the same.

11. *Proper Exercise of Business Judgment*. Based on the Motion, the First Day Declaration, the other evidence filed in support of the Motion, and the record presented to the Court at the Interim Hearing and Second Interim Hearing, (a) the terms of adequate protection granted to the Prepetition Secured Parties, (b) the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral), and (c) the Cash Collateral arrangements described herein pursuant to this Amended Third Interim Order are (i) fair, reasonable, and the best available to the Debtors under the circumstances; (ii) reflective of the Debtors' exercise of

[7] For the avoidance of doubt, in calculating Diminution in Value, any Diminution in Value with respect to Prepetition Collateral for which the applicable Prepetition Lien is successfully challenged by entry of a final order pursuant to paragraph 27 of this Amended Third Interim Order shall not be included in the calculation of Diminution in Value.

prudent business judgment consistent with their fiduciary duties; and (iii) supported by reasonably equivalent value and fair consideration.

12. *Notice*. Proper, timely, adequate, and sufficient notice of the Motion and the relief sought in this Amended Third Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the entry of this Amended Third Interim Order shall be required.

**H. Relief Essential**.

13. The Court concludes that entry of this Amended Third Interim Order is (a) necessary, essential, and appropriate to avoid immediate and irreparable harm and for the continued operation of the Debtors' businesses and the management and preservation of their assets and properties, and (b) is in the best interests of the Debtors' estates.

**NOW, THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the First Interim Order, the Second Interim Order, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

**I. Motion Approved**.

14. The Motion is hereby granted on an interim basis in accordance with and subject to the terms and conditions of this Amended Third Interim Order. Any objections or other statements to any of the relief set forth in this Amended Third Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Amended Third Interim Order, are hereby overruled.

**J. Use of Cash Collateral**.

15. The Debtors' continued use of the Prepetition Collateral (including Cash Collateral) and the proceeds thereof is authorized and approved, in each case, solely in the manner and for the purposes expressly permitted under this Amended Third Interim Order, including the Budget (subject to Permitted Variances), for the period through and including October 23, 2026, unless a Termination Date (as defined herein) occurs prior thereto, for the following purposes: (a) to pay the costs of administration of the Cases and claims or amounts approved by this Court in the "first" and "second" day orders or as required under the Bankruptcy Code; (b) for general corporate and working capital purposes, in each case, subject to the terms and conditions of this Amended Third Interim Order, including the Budget (subject to Permitted Variances); and (c) to fund the Interest Escrow Account in accordance with paragraph 19(iv) below.

16. This Amended Third Interim Order, the Adequate Protection Liens, and the Adequate Protection Claims shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the Debtors and shall be fully enforceable and maintain their respective priorities as provided in this Amended Third Interim Order against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee elected or appointed in any of the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Cases or any such successor cases (collectively, the "**Successor Cases**"), and their creditors and other parties in interest; *provided*, that the Adequate Protection Claims shall be determined in light of priority, validity, enforceability and perfection of the Prepetition Liens, which are subject to challenge in accordance with paragraph 27 of this Amended Third Interim Order, and the Adequate Protection Liens. Subject

to the terms of this Amended Third Interim Order, including paragraph 27 hereof, no obligation, payment, transfer, or grant of security under this Amended Third Interim Order to the Prepetition Secured Parties shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, avoidance, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law (foreign or domestic).

**K. Adequate Protection Collateral**.

17. The term "**Adequate Protection Collateral**" means, collectively, all of the Debtors' assets and property, excluding causes of action or claims (a) arising under sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (collectively, the "**Avoidance Actions**") and (b) any commercial tort claims of any kind or nature whatsoever, *provided* that, subject to entry of a Final Order, the proceeds of such Avoidance Actions and commercial tort claims shall constitute Adequate Protection Collateral. For greater certainty, the Prepetition Secured Parties do not agree that liens on the proceeds of Avoidance Actions and commercial tort claims would constitute adequate protection in connection with any Final Order and the Committee may propose alternative forms of adequate protection for the use of cash collateral at any time prior to the deadline for filing opposition to the Final Order. The Committee reserves all of its rights to object to the inclusion of proceeds of Avoidance Actions and commercial tort claims in the Adequate Protection Collateral at the Final Hearing. Notwithstanding the foregoing, the Adequate Protection Collateral shall not include assets or

property upon which, and solely to the extent that, the grant of an Adequate Protection Lien would not be enforceable pursuant to applicable law, but shall include the proceeds thereof.

**L. Adequate Protection Claims and Liens.**

18. Adequate Protection for Prepetition Secured Parties. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Prepetition Secured Parties are hereby granted the following adequate protection of their interests, including liens and security interests, in the Prepetition Collateral (including Cash Collateral):

19. As adequate protection for the respective interests of the Prepetition Secured Parties in the Prepetition Collateral (including the Cash Collateral), pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of their respective Prepetition Collateral, including any Cash Collateral, each of the Prepetition Secured Parties, as applicable, are hereby granted the following, effective as of the Petition Date:

(i) *Adequate Protection Claims*. To the extent that the Adequate Protection Liens granted below are valid, perfected and fully enforceable and fail to adequately protect the Prepetition Secured Parties from any Diminution in Value of the Prepetition Liens (to the extent the Prepetition Liens are valid, perfected and fully enforceable) in the Prepetition Collateral, pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, the Prepetition Trustee, for itself and for the benefit of the Prepetition Secured Parties, is hereby granted, to the extent of any such Diminution in Value, allowed superpriority administrative expense claims against each of the Debtors on a joint and several basis, which claims shall be payable from and have recourse to all Adequate Protection Collateral and the Interest Escrow Account, and shall have the priority in payment specified in section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**").

(ii) *Adequate Protection Liens*. As security for and solely to the extent of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, the Prepetition Trustee, for itself and for the benefit of the other Prepetition Secured Parties, is hereby granted, effective as of the Petition Date (and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Trustee), replacement liens upon all Adequate Protection Collateral (such

liens and security interests, the “**Adequate Protection Liens**”), which Adequate Protection Liens (1) shall be subject and subordinate only to valid, enforceable and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that, after giving effect to any valid and enforceable subordination agreement (if any), are senior in priority to the Prepetition Liens by operation of applicable non-bankruptcy law (collectively, the “**Permitted Prior Liens**”); and (2) shall be junior in priority, perfection and enforceability as to any Prepetition Liens on the Prepetition Collateral.

(iii) *Budget Compliance and Reporting*. As additional adequate protection of the Prepetition Secured Parties’ interests in the Prepetition Collateral (including Cash Collateral), the Debtors shall comply with the Budget (subject to Permitted Variances), budget delivery, variance reporting, and other reporting obligations set forth in Section M of this Amended Third Interim Order.

(iv) *Interest Escrow*. As additional adequate protection of the Prepetition Secured Parties’ interests in the Prepetition Collateral (including Cash Collateral), the Debtors shall continue to deposit, in cash, into the Interest Escrow Account, an amount equal to one (1) month’s interest accrued on the aggregate prepetition principal amount of the Senior Secured Notes and accrued and unpaid interest outstanding as of the Petition Date, calculated at the non-default contract rate applicable thereto, on or before the first Business Day of each calendar month, commencing with the first full calendar month following entry of this Amended Third Interim Order and continuing on the first Business Day of each successive calendar month through and including October 23, 2026. The funds on deposit in the Interest Escrow Account shall not be withdrawn, disbursed, encumbered or otherwise used by the Debtors, and shall be held solely as adequate protection for the benefit of the Secured Noteholders, subject to further order of the Court, pending the Final Hearing. The rights of all parties in interest (including the Committee) to assert that, to the extent any of the Prepetition Secured Parties receive a non-defeasible payment of such funds on deposit in the Interest Escrow Account, and such Prepetition Secured Parties are later determined to be undersecured with respect to the Prepetition Secured Obligations, such payments should be applied to the principal amounts owing on account of the Prepetition Secured Obligations, are fully preserved.

(v) *Right to Seek Additional Adequate Protection*. This Amended Third Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the respective Prepetition Secured Parties to request additional forms of adequate protection at any time. The rights of all parties in interest (including the Committee) to timely object to the

granting of any request for additional forms of adequate protection are also fully preserved.

**M. Budget, Variance, and Other Reporting**.For purposes hereof: (i) "**Budget**" means a rolling thirteen (13)-week cash flow forecast of the Debtors, which reflects the Debtors' projected cash receipts, projected disbursements, and projected liquidity, beginning on the Monday immediately following the date of entry of this Amended Third Interim Order, to be delivered in accordance with the procedures set forth in this Amended Third Interim Order; (ii) "**Updated Budget**" means an updated Budget delivered by the Debtors to the Prepetition Secured Parties, counsel to the Ad Hoc Group, the U.S. Trustee, and the Committee absent further order of the Court, on or before the last Business Day of the first full week after entry of this Amended Third Interim Order and every week thereafter, which Updated Budget shall: (a) be prepared in good faith by the Debtors' management, with the assistance of their advisors; (b) be in substantially the same format as the Budget or in such other format as the Debtors may determine is appropriate given the circumstances of the Chapter 11 Cases; and (c) cover the forward-looking thirteen (13)-week period commencing on the first day of the calendar week immediately following the date of delivery of such Updated Budget; and (iii) "**Approved Budget**" means (1) initially, the budget attached hereto as **Exhibit 1**, as the same may be updated, modified, supplemented, or replaced from time to time in accordance with the procedures set forth in this Amended Third Interim Order, and (2) thereafter, each successive Updated Budget, which Updated Budget shall become the Approved Budget upon delivery to the Prepetition Secured Parties, counsel to the Ad Hoc Group, the U.S. Trustee, and counsel to the Committee and written approval of such Updated Budget, or failure to respond (which response or objection shall be provided to each of the Debtors, the U.S. Trustee and the Committee), by the Ad Hoc Group within three (3) Business Days of such delivery. The rights of the Committee and other parties in interest to seek appropriate relief with the Court

in connection with any Updated Budget or Approved Budget are expressly reserved.

21. The Debtors shall publicly file with the Court an updated Budget on or before 5:00 p.m., prevailing Central Time, on each Friday, commencing on the first Friday following entry of this Amended Third Interim Order and continuing on each successive Friday thereafter. For the avoidance of doubt, the filing of an updated Budget on the docket pursuant to this paragraph shall be in addition to, and not in lieu of, any other budget delivery or reporting obligations set forth in this Amended Third Interim Order.

22. The Debtors shall deliver to the Prepetition Trustee, counsel to the Ad Hoc Group, the U.S. Trustee, and counsel to the Committee, a variance report setting forth variances from the Approved Budget for the applicable Variance Testing Period and certifying compliance or non-compliance with the Permitted Variances (each such report, a "**Variance Report**"). "**Variance Testing Period**" shall mean (i) initially, the four-calendar week period commencing on the date of entry of this Amended Third Interim Order and ending on the Friday of the fourth full calendar week thereafter, and (ii) thereafter, each successive four-calendar week period ending on Friday of the fourth calendar week thereof. "**Permitted Variances**" means, for any Variance Testing Period, (a) actual cumulative disbursements for Payroll & Benefits and Occupancy & Leases in the applicable four-week period, which shall not exceed one hundred five percent (105%) of projected cumulative total disbursements in these line items set forth in the Approved Budget for such period; (b) actual cumulative disbursements for First Day Motion Payments in the period prior to entry of a Final Order, which shall not exceed one hundred percent (100%) of the amounts permitted for such First Day Motions Payments by the interim and final orders entered by the Court on August 3, 2026, August 28, 2026, and any subsequent orders of the Court that increased the amounts initially authorized thereby, in each case authorizing, but not directing, the Debtors to

make such payments; and (c) actual cumulative disbursements for Operating Expenses, Inventory Purchases, and All Other Operating Disbursements in the applicable four-week period, which shall not exceed one hundred twenty-five percent (125%) of projected cumulative total disbursements in these line items set forth in the Approved Budget for such period.

23. In addition, the Debtors shall deliver such reporting and other documentation and reports as are currently required to be delivered pursuant to the Indenture, as and when due or requested thereunder, and shall provide copies of such reporting, documentation, and reports substantially simultaneously to the Committee. The Debtors shall deliver to counsel for the Ad Hoc Group and the Committee the information requested in **Exhibits 2 and 3** promptly when available after commercially reasonable efforts by the Debtors to obtain such information, and concurrently identify the specific diligence request that such information is being provided in response to.

**N. Modification of Automatic Stay**.

24. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit: (a) the Debtors to take all appropriate actions (to the extent any further action is necessary) to grant the Adequate Protection Liens and incur the Adequate Protection Claims set forth herein, and to take all appropriate actions to ensure that the Adequate Protection Liens granted hereunder are perfected and maintain the priority set forth herein; and (b) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Amended Third Interim Order, without further notice, motion or application to, or order of this Court.

**O. Perfection of Adequate Protection Liens**.

25. This Amended Third Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted herein, including, without limitation, the Adequate Protection Liens, without any further act and without the necessity of the execution, filing, or recording any financing statement, mortgage, security agreement, pledge agreement, notice, or other instrument or document, or the registration of liens on any certificates of title, that may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any Prepetition Collateral) to attach, validate, perfect or prioritize such liens and security interests, or to entitle the Prepetition Secured Parties to the priorities granted herein. For avoidance of doubt, the Adequate Protection Liens shall have the same validity, priority, perfection and enforceability of the Prepetition Liens and nothing herein shall constitute a determination thereof. Except as limited by this Order, including in paragraph 27 hereof, the Debtors and all parties in interest reserve all of their rights with respect to the validity, priority, perfection and enforceability of any such Prepetition Liens.

26. Notwithstanding the foregoing, a certified copy of this Amended Third Interim Order may, in the discretion of the Prepetition Trustee, be filed with or recorded in filing or recording offices in addition to or in lieu of any security documents, and all filing offices are hereby authorized and directed to accept such certified copy of this Amended Third Interim Order for filing and/or recording, as applicable, and all such security documents shall be deemed to have been filed or recorded on the Petition Date. The automatic stay of section 362(a) of the Bankruptcy

Code shall be modified to the extent necessary to permit the Prepetition Trustee to take all actions, as applicable, referenced in this Section O.

**P. Reservation of Rights**.

27. Notwithstanding anything to the contrary in this Amended Third Interim Order, nothing in this Amended Third Interim Order shall be construed as a finding or ruling on, or as prejudicing, limiting, or otherwise affecting, the rights of the Debtors, the Prepetition Secured Parties, the Committee, or any other party in interest (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) with respect to the validity, enforceability, perfection, priority, extent, or avoidability of the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Secured Financing Documents, and all such rights, claims, defenses, counterclaims, offsets, causes of action, and challenges (including, without limitation, Avoidance Actions, claims for recharacterization, equitable subordination, and any so-called "lender liability" claims and causes of action) are hereby expressly preserved and reserved for all parties. For the avoidance of doubt, the Debtors' agreement to provide the adequate protection set forth in this Amended Third Interim Order shall be without prejudice to, and shall not constitute a waiver of, the Debtors' or any other party in interest's rights to (a) object to or challenge the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Secured Financing Documents, as to the Debtors, prior to or at the last day to file opposition to the Final Order, and as to any other party in interest with standing to do so, prior to the 90th day following entry of the First Interim Order (the "**Challenge Period**"); *provided*, that the Challenge Period for the Committee shall be tolled for a number of days equal to the number of days in the Standstill Period, (b) assert any offsets, defenses, counterclaims, recoupment, or

other claims with respect to the Prepetition Secured Obligations, (c) assert or prosecute any Avoidance Actions or other causes of action against any of the Prepetition Secured Parties or any of their Related Parties, (d) object to the allowance of any claim on account of the Prepetition Secured Obligations, or (e) seek to surcharge any Prepetition Collateral or Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise (collectively, the "**Challenges**"); *provided*, *further*, that (i) if, prior to the expiration of the Challenge Period, the Committee (A) files a motion seeking standing to bring a Challenge, which attaches one or more draft complaints that detail the alleged Challenges for which the Committee seeks standing to assert, and (B) seeks an expedited hearing before the Court brought on no more than seven (7) calendar days' notice to all parties in interest, the expiration of the Challenge Period shall be further tolled solely for the Committee solely with respect to the Challenges identified in such complaints until 11:59 p.m. (prevailing Central Time) on the date that is two (2) Business Days after such standing motion is adjudicated by the Court, and (ii) to the extent not previously heard, any such standing motion or related Challenge shall be heard simultaneously with the confirmation hearing on any chapter 11 plan proposed by the Debtors. The Prepetition Secured Parties likewise reserve all rights with respect to the Debtors' obligations under this Amended Third Interim Order, the First Interim Order, the Second Interim Order, the Prepetition Secured Financing Documents, and applicable law. Notwithstanding anything to the contrary herein, the Challenge Period may be extended solely with respect to the Committee by the written agreement (email being sufficient) of counsel to each of the Debtors, the Ad Hoc Group, and the Committee.

**Q. Termination Event**.

28. A "**Termination Event**" shall occur if (a) the Debtors' actual cumulative disbursements for any Variance Testing Period exceed the Permitted Variances upon delivery of a

written notice thereof to counsel to the Debtors by the Required Prepetition Secured Parties or (b) the Debtors fail to provide the information as and when required in paragraphs 21, 22, 23, and 24 and any such failure is not cured within two (2) days, unless waived in writing by the Required Prepetition Secured Parties to the Debtors and the Committee (the date on which a Termination Event occurs, the "**Termination Date**").

**R. Remedies Upon a Termination Event**.

29. Upon the occurrence or during the continuation of a Termination Event, the Required Prepetition Secured Parties may send written notice (the "**Remedies Notice**"), email being sufficient, to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee (the "**Remedies Notice Parties**") that a Termination Event has occurred, and, prior to taking any enforcement action, the Required Prepetition Secured Parties shall file with the Court and seek a hearing (the "**Stay Relief Hearing**") upon no less than five (5) Business Days' notice (unless the Debtors, the Committee, and the Required Prepetition Secured Parties agree to request that the Court conduct the Stay Relief Hearing on shorter notice) to the Remedies Notice Parties (the "**Remedies Notice Period**") to lift the automatic stay. Following the Stay Relief Hearing, and if the Court determines that the automatic stay should be lifted, the Court may fashion an appropriate remedy. Prior to entry of the relevant order granting relief from the automatic stay (if any), the Prepetition Secured Parties shall not (i) terminate, restrict, and/or revoke the Debtors' right under this Amended Third Interim Order to use any Cash Collateral, (ii) freeze monies or balances in the Debtors' accounts, (iii) otherwise enforce any and all rights against the Prepetition Collateral, or (iv) take any other actions or exercise any other rights or remedies permitted under this Amended Third Interim Order or applicable law. In any hearing related to such non-consensual use of Cash Collateral, the Debtors, the Prepetition Trustee, the Committee, and the Prepetition Secured Parties

may raise, assert, prosecute, or otherwise advance any and all rights and arguments that could be asserted at such hearing.

**S. Binding Effect of this Amended Third Interim Order**.

30. Subject to the terms and conditions of this Amended Third Interim Order (including paragraph 27 hereof), immediately upon entry of this Amended Third Interim Order by the Court, effective as of the Petition Date, the provisions of this Amended Third Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the Prepetition Secured Parties, the Committee, or any other committee appointed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of each of the Debtors and their respective successors and assigns.

**T. Survival**.

31. The terms and provisions of this Amended Third Interim Order and any actions taken pursuant hereto or thereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities, and shall not be modified, impaired, or discharged by, entry of any order that may be entered (a) confirming a plan of reorganization, (b) converting any or all of the Cases to cases under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Cases, or (d) pursuant to which the Court abstains from hearing any of the Cases. This Court shall retain jurisdiction, notwithstanding any such

confirmation, conversion, or dismissal, for the purposes of enforcing this Amended Third Interim Order, and all of the protections, rights, remedies, liens, claims, priorities, privileges, and benefits granted to the Prepetition Secured Parties hereunder or thereunder.

**U. Effectiveness**.

32. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Amended Third Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Amended Third Interim Order.

**V. Bankruptcy Rules**.

33. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

**W. Headings**.

34. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Amended Third Interim Order.

**X. Computing Time Periods**.

35. All time periods set forth in this Amended Third Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Y. Necessary Action**.

36. The Debtors are authorized to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Amended Third Interim Order.

**Z. Final Hearing, Discovery and Miscellaneous Matters**.

37. The Final Hearing on the Motion shall be held on October 20, 2026, at 11:00 a.m., prevailing Central Time, or such other date and time as the Court may designate. Any objections

or responses to entry of a final order on the Motion shall be filed and served on or before October 12, 2026, at 4:00 p.m., prevailing Central Time. In the event no objections to entry of the final order on the Motion are timely filed and served, this Court may enter such final order without need for the Final Hearing.

38. The Debtors shall provide the Ad Hoc Group and the Committee with the Debtors' proposed form of Final Order or any fourth interim order to use cash collateral or any proposed order authorizing postpetition financing no later than October 8, 2026. The Debtors shall continue to produce documents, including communications, in response to the Ad Hoc Group's request for production of documents in connection with the Ad Hoc Group's *First Set of Requests for Production to the Debtors* served on August 4, 2026, subject to the *Debtors' Responses and Objections to Noteholder Group's First Set of Requests for Production* served on August 14, 2026, on a rolling basis, with the production to be substantially completed by no later than October 7, 2026. The Debtors shall provide counsel for the Ad Hoc Group and counsel for the Committee with copies of any proposal, term sheet, letter of intent, or similar expression of interest for any postpetition financing received by the Debtors, any member of the Board of Directors of any Debtor or any advisor to any of the forgoing (a "**DIP Proposal**") within 24 hours of receipt, *provided*, that any such DIP Proposal may be designated by the Debtors as "confidential" or "highly confidential" under the terms of the protective order entered in the Chapter 11 Cases; *provided* that, notwithstanding any provision of such protective order, any dispute regarding the "confidential" or "highly confidential" nature of any such DIP Proposal or of any information contained therein shall be resolved by the Court on three (3) days' notice, subject to Court availability. Notwithstanding the foregoing provision, the Debtors agree that they shall not designate as "confidential" or "highly confidential" any DIP Proposal that involves, includes, or

refers to, in any way, Charles Ergen, EchoStar, any affiliate of Charles Ergen and EchoStar, or any family member of Charles Ergen. The Debtors shall offer the Ad Hoc Group and the Committee the opportunity to make a competing proposal. Any depositions in connection with the relief requested at the Final Hearing or any subsequent interim hearing shall be held on or before October 9, 2026.

39. For greater clarity, the Ad Hoc Group and the Committee do not consent to any shortened time or emergency relief with respect to any proposed postpetition financing pursuant to section 364 of the Bankruptcy Code. Notwithstanding the foregoing, the Debtors may seek to shorten time or obtain emergency relief with respect to postpetition financing pursuant to section 364 of the Bankruptcy Code; *provided* that the Ad Hoc Group and the Committee shall receive no less than fourteen (14) days' notice of any hearing regarding any such relief. The Ad Hoc Group and the Committee reserve all rights to oppose any request for shortened time or emergency relief.

40. Notwithstanding any other provisions in this Amended Third Interim Order or any final orders pertaining to the use of cash collateral in these Chapter 11 Cases, any statutory liens on account of ad valorem taxes held by the Texas Taxing Authorities[8] (the "**Tax Liens**") shall retain their prepetition lien priority as provided by applicable nonbankruptcy law and will not be primed by nor made subordinate to any liens granted to any party hereby, to the extent the Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

[8] The term "Texas Taxing Authorities" is defined as all ad valorem taxing jurisdictions represented by the law firms of Linebarger Goggan Blair & Sampson, LLP, Perdue, Brandon, Fielder, Collins & Mott LLP, McCreary Veselka Bragg and Allen, P.C., and Abernathy, Roeder, Boyd & Hullet, P.C.

**AA. Retention of Jurisdiction**.

41. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Amended Third Interim Order.

**BB. Non-Waiver**.

42. No failure or delay on the part of any party in exercising any right, power, or remedy under this Amended Third Interim Order, the Prepetition Secured Financing Documents, or applicable law shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof or the exercise of any other right, power, or remedy. No course of dealing or course of performance between the parties shall constitute a waiver of any rights or obligations under this Amended Third Interim Order. All rights and remedies provided hereunder and under the Prepetition Secured Financing Documents are cumulative and are not exclusive of any other rights or remedies that may be available at law, in equity, or otherwise. No waiver of any provision of this Amended Third Interim Order shall be effective unless set forth in a written instrument duly executed by the party or parties to be bound thereby.

Signed: October 16, 2026



Alfredo R Pérez
United States Bankruptcy Judge

**Exhibit 1**

**Budget**

**13-Week Forecast**
*($ in Mns)*

| | Week 1 Oct-26 10/9/26 | Week 2 Oct-26 10/16/26 | Week 3 Oct-26 10/23/26 | Week 4 Oct-26 10/30/26 | Week 5 Nov-26 11/6/26 | Week 6 Nov-26 11/13/26 | Week 7 Nov-26 11/20/26 | Week 8 Nov-26 11/27/26 | Week 9 Dec-26 12/4/26 | Week 10 Dec-26 12/11/26 | Week 11 Dec-26 12/18/26 | Week 12 Dec-26 12/25/26 | Week 13 Jan-27 1/1/27 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | |
| Receipts | $ 15.8 | $ 16.4 | $ 14.6 | $ 14.6 | $ 15.6 | $ 14.8 | $ 14.8 | $ 14.7 | $ 18.0 | $ 15.7 | $ 15.5 | $ 14.9 | $ 19.7 | $ 205.1 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Payroll & Benefits | $ (0.5) | $ (7.1) | $ (0.4) | $ (5.8) | $ (0.5) | $ (5.8) | $ (0.4) | $ (5.8) | $ (0.5) | $ (5.8) | $ (0.4) | $ (5.8) | $ (0.5) | $ (39.7) |
| Operating Expenses | (1.3) | (4.3) | (2.9) | (4.4) | (5.6) | (4.3) | (3.9) | (2.6) | (3.9) | (4.3) | (3.8) | (2.6) | (3.8) | (47.6) |
| Inventory Purchases | (1.6) | (2.2) | (1.8) | (3.0) | (2.3) | (3.0) | (2.9) | (2.8) | (2.5) | (2.5) | (1.8) | (1.6) | (2.9) | (30.9) |
| Occupancy and Leases | (2.6) | (1.3) | (1.4) | (1.2) | (3.1) | (0.3) | (2.4) | (1.2) | (3.1) | (0.3) | (1.2) | (2.4) | (2.7) | (23.2) |
| J3 Lease | - | - | - | - | - | - | (15.9) | - | - | - | (15.9) | - | - | (31.8) |
| All Other | (1.7) | (3.5) | (2.0) | (2.5) | (1.5) | (1.8) | (3.0) | (2.1) | (1.7) | (1.6) | (3.5) | (2.5) | (2.2) | (29.5) |
| Total Operating Disbursements | $ (7.7) | $ (18.5) | $ (8.4) | $ (17.0) | $ (13.0) | $ (15.3) | $ (28.4) | $ (14.6) | $ (11.7) | $ (14.6) | $ (26.7) | $ (15.0) | $ (12.1) | $ (202.8) |
| **Operating Cash Flow** | **$ 8.1** | **$ (2.1)** | **$ 6.2** | **$ (2.4)** | **$ 2.7** | **$ (0.4)** | **$ (13.6)** | **$ 0.1** | **$ 6.3** | **$ 1.2** | **$ (11.3)** | **$ (0.1)** | **$ 7.6** | **$ 2.2** |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Debt Service | $ - | $ - | $ - | $ - | $ (3.4) | $ - | $ - | $ - | $ (3.4) | $ - | $ - | $ - | $ - | $ (6.7) |
| Professional Fees | (0.1) | - | - | (0.5) | (0.1) | - | - | - | (0.1) | - | - | - | (0.1) | (0.9) |
| First Day Motion Payments | (0.4) | (4.6) | (3.4) | (1.6) | (0.5) | - | - | - | - | - | - | - | - | (10.5) |
| Total Non-Operating Disbursements | $ (0.5) | $ (4.6) | $ (3.4) | $ (2.1) | $ (4.0) | $ - | $ - | $ - | $ (3.5) | $ - | $ - | $ - | $ (0.1) | $ (18.1) |
| **Net Cash Flow** | **$ 7.6** | **$ (6.7)** | **$ 2.8** | **$ (4.5)** | **$ (1.3)** | **$ (0.4)** | **$ (13.6)** | **$ 0.1** | **$ 2.8** | **$ 1.2** | **$ (11.3)** | **$ (0.1)** | **$ 7.5** | **$ (15.9)** |
| Beginning Domestic Book Cash | $ 130.7 | $ 138.4 | $ 131.7 | $ 134.5 | $ 130.0 | $ 128.7 | $ 128.2 | $ 114.6 | $ 114.7 | $ 117.5 | $ 118.7 | $ 107.5 | $ 107.4 | $ 130.7 |
| (+/-) Net Change in Cash | 7.6 | (6.7) | 2.8 | (4.5) | (1.3) | (0.4) | (13.6) | 0.1 | 2.8 | 1.2 | (11.3) | (0.1) | 7.5 | (15.9) |
| **Ending Domestic Book Cash** | **$ 138.4** | **$ 131.7** | **$ 134.5** | **$ 130.0** | **$ 128.7** | **$ 128.2** | **$ 114.6** | **$ 114.7** | **$ 117.5** | **$ 118.7** | **$ 107.5** | **$ 107.4** | **$ 114.8** | **$ 114.8** |

# Exhibit 2

## Diligence Information

Third Tier Information

- Details on enterprise and government contracts (including contract structure changes over past 4 years)
- Pricing and margin of equipment products
- Additional detail on Capitalized Software
- Additional detail on Other Capex
- Additional detail on Research and Development
- Further analysis of terms and deliverables related to opportunities in the pipeline across enterprise segments (Aero, Managed Services, Defense, and International Enterprise), including contract structure and award duration
- Include planned initiatives to grow go-forward pipelines across segments
- By segment, please split revenue between contracted recurring and non-recurring, and provide the weighted average remaining contract term
- 2023-2024 quarterly P&Ls (revenue through OFCF) by segment (consistent with the format shared for Q1'25 through Q2'26)
- Revenue through Adjusted OFCF (including the enterprise business) for J1, J2, and J3, quarterly from Q1 2023 through Q2 2026 (or at start of lease agreement for J3)
- Breakout of fixed vs. variable cost detail across remaining business segments not addressed in Second Tier diligence (Consumer – North America, Consumer – International, Managed Services (excl. OneWeb), and International Enterprise)
- Details on connections between Hughes and EchoStar / EchoStar affiliates
    - Intercompany agreements (operations (including shared corporate services), tax, leases, debt, IP, licenses, regulatory agreements, etc.)
    - Shared employees
    - Shared real estate
    - Description of shared software and IT systems, including which entity holds the IT license
    - Latest intercompany accounts payable and accounts receivable balances by entity (including aging)
    - Details on cash management / treasury (i.e., list of relevant accounts) and intercompany payment settlement mechanics
    - List of change-of-control provisions possibly triggered upon separation between EchoStar and Hughes
    - List of all expected payments between the entities through Q1 2027
    - Any analysis / materials created on a separation between EchoStar and Hughes

# Exhibit 3

## UCC Priority Business Diligence Requests

1. Internal consolidated and consolidating financial statements, general ledgers, trial balances (annual, quarterly and monthly) for HSSC and subsidiaries, 2023–present
2. Historical segment P&L (Consumer / Enterprise / Government), monthly / quarterly, 2023–present
3. Historical capex by year and asset with supporting rationale
4. All asset dispositions over $10MM since 2023 for Hughes entities
5. Any prior diligence, banker, valuation, or strategy materials regarding a sale of the Company or its assets, and identification of potential buyers to maximize value for creditors. Include any inbound indications of interest
6. Any retention, severance, or incentive programs and their cost
7. All satellite-capacity leases with terms and counterparties
8. Intercompany balance detail and reconciliations since 2023 by counterparty to assess business interdependencies
9. Contract counterparties, monthly/quarterly P&Ls, and any documentation or memos regarding the J3 lease and future plans associated with J3 utilization
10. Provide any valuations and projections regarding the J3 satellite, including any materials discussing potential alternatives
11. For purposes of assessing separability, provide any tax sharing/allocation agreements from 2023 to date and any analysis/calculation related to intercompany payments under such agreements or, if no such agreement(s) exist, how tax sharing and allocation has been calculated
12. Management's view on the separability of the Consumer / Enterprise / Government segments
13. Provide a list of Hughes subscribers, by state
14. Status and remaining value of disclosed program positions and any expected follow-on awards
15. Capex requirements to support growth in different business segments, including cash harvesting scenarios with minimal investment
16. Regulatory/change-of-control implications for FCC licenses and orbital slot authorizations under any change of control scenario
17. Availability threshold in each beam category to allow a beam to begin to support increased enterprise services. Quantification of how much consumer broadband must be offloaded to allow a beam to support any new services, by satellite
18. Defined view of the SLA for corporate clients and the role the Company expects satellite vs terrestrial infrastructure / services to play in those clients
19. Org chart of the sales, finance, engineering and operations teams that support the business by segment and any overlapping responsibilities within Echostar

20. Detailed buildup of "stand alone" overhead with description of functions that do not currently exist as well as estimates of costs to provide in-house
21. Action plan to improve profitability of negative margin business segments